RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0071p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 15-4192

*v.*

ERROL DONTES KING,

*Defendant-Appellant.*

Appeal from the United States District Court for
the Northern District of Ohio at Cleveland.
No. 1:14-cr-00336—Sara E. Lioi, District Judge.

Argued: July 28, 2016

Decided and Filed: March 30, 2017

Before: WHITE and STRANCH, Circuit Judges; MICHELSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Nathan A. Ray, BURDON & MERLITTI, LPA, Akron, Ohio, for Appellant.
Matthew J. Cronin, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.
**ON BRIEF:** Nathan A. Ray, BURDON & MERLITTI, LPA, Akron, Ohio, for Appellant.
Matthew J. Cronin, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

---

[*]The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan,
sitting by designation.

---
**OPINION**
---

MICHELSON, District Judge.  Defendant Errol King pleaded guilty to being a felon in possession of a firearm and, based on King's prior convictions, the Government sought and obtained an enhanced sentence under the Armed Career Criminal Act.  On appeal, King maintains that the ACCA's fifteen-year mandatory minimum does not apply to him.  He makes this claim not by arguing that he has fewer than three prior convictions for violent felonies, but by arguing that the Government cannot show that his prior offenses were committed on different occasions.  In assessing King's claim, we must answer the following question:  When a federal district court is tasked with determining whether a defendant's prior offenses were "committed on occasions different from one another" as that phrase is used in the ACCA, is the court restricted to using only the evidentiary sources approved in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005)?  We think both the legal and policy rationales behind *Taylor* and *Shepard*'s evidentiary restrictions compel an affirmative answer. This conclusion, coupled with our finding that the district court sentenced King under the ACCA using evidence not approved by *Taylor* and *Shepard*, requires us to VACATE the district court's judgment and REMAND for resentencing.

**I.**

**A.**

In 2002, King was convicted in Ohio courts for committing a number of similar crimes on the same day.

Three indictments led to King's convictions.  One asserted that King (and another) had robbed and kidnapped one Arthur Lundberg "on or about" February 18, 2002.  A second said that King (and another) had robbed and kidnapped one David Mariano—also on or about February 18, 2002.  And the third indictment charged that King (along with three others) had committed aggravated robbery against five victims—again on or about February 18, 2002.  None of the indictments alleged the times or locations of the offenses.

But three bills of particulars did.  The one filed in the Lundberg case stated, in relevant part, "the Prosecuting Attorney says that the State of Ohio will prove [at trial], the following: That on or about February 18, 2002 at approximately 1900 hours, and at the location of 740 Euclid Avenue, in the City of Cleveland, Ohio," King had kidnapped and robbed Lundberg (or tried to).  Similarly, the bill of particulars filed in the Mariano case asserted that Ohio would prove that King's criminal conduct had occurred "on or about February 18, 2002, at approximately 7:27 p.m., and at the location of 1000 Barn Court, in the City of Cleveland, Ohio."  And in the case charging King with five counts of aggravated robbery, the bill claimed that Ohio would prove that the offenses had occurred "on or about February 18, 2002 at approximately 7:50 p.m., and at the location of East 21st and Euclid, in the City of Cleveland, Ohio."  In short, together, the bills of particulars indicate that the offenses charged in each of the three indictments occurred about 25 minutes apart and that King committed them at different locations in Cleveland.

King eventually pleaded guilty to some charges (or amended charges).  Apparently due to Ohio's record-keeping practices, transcripts of King's plea colloquies are no longer available.  And while each guilty plea was memorialized in a "Journal Entry," like the indictments, none of the journal entries provide the alleged times or locations of King's offenses.

**B.**

About twelve years later, in February 2015, King pleaded guilty in federal district court to possessing a firearm with a felony conviction in violation of 18 U.S.C. § 922(g)(1).  Although that conviction carries a maximum sentence of ten years in prison, *see* 18 U.S.C. § 924(a)(2), given King's 2002 convictions, the Government sought a fifteen-year mandatory minimum under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  The ACCA states in relevant part, "In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).

King disputed the Government's claim that he was subject to the ACCA's enhancement. Although conceding that his 2002 convictions were "violent felon[ies]" under the ACCA, King

claimed that the tests established by *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), excluded the bills of particulars from the evidence the court was permitted to rely on in determining whether his 2002 offenses were "committed on occasions different from one another." And, argued King, reviewing the appropriate documents revealed only that his prior offenses took place on the same day, and the Government thus failed to show that his felonies were committed on different occasions.

The Government's argument to the district court was three tiered. The Government first took the position that *Taylor* and *Shepard*'s restrictions on the evidence that a sentencing court may consider apply only when the court determines whether the elements of a prior conviction match the elements of an ACCA predicate. In support of this position, the Government relied on a footnote in *United States v. Thomas*, where we indicated that *Taylor*'s evidentiary limitations (*Shepard* had not yet been decided) did not apply to the different-occasions inquiry. *See* 211 F.3d 316, 318 n.3 (6th Cir. 2000). The Government next argued that even if the evidentiary restrictions of *Taylor* and *Shepard* extend to the different-occasions inquiry, the bills of particulars filed in the 2002 cases came within those restrictions. Lastly, as an (admittedly weaker) alternative, the Government asserted that based on only the indictments and journal entries, it was still more likely than not that King's prior offenses had occurred on different occasions.

The district court agreed with the Government's first argument and so it did not reach the other two. In particular, although recognizing that we previously questioned *Thomas*'s viability given *Shepard*, *see United States v. Barbour*, 750 F.3d 535, 543 n.1 (6th Cir. 2014), the district court believed that *Thomas* remained binding precedent. It thus relied on the bills of particulars, concluded that King's 2002 offenses were "committed on occasions different from one another," and sentenced King to fifteen years and eight months in prison under the ACCA. Regarding the evidence that may be considered in making the different-occasions determination, the district court remarked, "the issue is absolutely teed up for the Sixth Circuit. And now it's a matter that the Sixth Circuit has to decide."

**II.**

We review *de novo* the issue of what evidence a court may rely on when deciding whether prior offenses were "committed on occasions different from one another" as that phrase is used in the ACCA.  *See United States v. Singer*, 782 F.3d 270, 279 (6th Cir. 2015); *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997).

**III.**

**A.**

King first claims that a district court, in deciding whether a defendant's prior offenses were "committed on occasions different from one another," may consult only the evidentiary sources approved by the Supreme Court in *Taylor* and *Shepard*.  We think that the reasoning of those decisions, especially in light of subsequent Supreme Court decisions, shows that King is correct.

In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court set out the approach that courts must use in determining whether a prior conviction qualifies as an ACCA predicate, such as "burglary, arson, or extortion."  The Court said that federal district courts are generally to employ a "formal categorical approach":  ask whether the elements of the prior offense match the elements of the "generic" version of the crime listed in the ACCA.  *Id.* at 600.  The Court noted, however, that it may be permissible for a sentencing court to consider information beyond the statutory definition of the prior offense where that definition has alternative elements and, if the defendant was convicted of one alternative, the conviction would count as an ACCA predicate, but if another, it would not.  *See id.* at 602.  "For example," hypothesized the Court, because generic burglary in the ACCA covered only entry into a building, if a prior conviction was for violating a burglary statute covering entry into a building *or* a vehicle, a court applying the ACCA could look to the "indictment or information and jury instructions" filed in the prior case to see if "the jury necessarily had to find an entry of a building to convict."  *Id.* This method of consulting limited evidence to determine which of several alternative elements underlies a prior conviction is now known as the "modified categorical approach." *See Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276, 2283–84 (2013).

More important to resolving this appeal is why the Supreme Court thought that a categorical approach, permitting a sentencing court to at most determine what "the jury necessarily had to find . . . to convict," *Taylor*, 495 U.S. at 602, was proper. One reason, the Court explained, was the legislative history of the ACCA: "If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history." *Id.* at 601. Another reason for not allowing sentencing courts to engage in a factual inquiry was the text of the ACCA: by referring to the defendant's "previous convictions" for violent felonies instead of, say, the defendant's "previous commission" of violent felonies, Congress had indicated that it was not the conduct leading to the conviction but the conviction itself that mattered to the ACCA-predicate determination. *Id.* at 600.

In *Shepard v. United States*, 544 U.S. 13 (2005), the Supreme Court adhered to these rationales. At issue was whether a prior conviction for violating a state law criminalizing burglary of a "building, ship, vessel, or vehicle" matched the ACCA's generic-burglary predicate. *Id.* at 16; *id.* at 31 (O'Connor, J., dissenting). Because the defendant's prior state conviction was the result of a plea, a court deciding if the ACCA applied could not (as *Taylor* had suggested) consult jury instructions in the state case to see if the defendant had been convicted of entry into a building as generic burglary requires. *See id.* at 17 (majority opinion). The Government took the position that the federal sentencing court could look to an uncontroverted police report alleging that the defendant had entered a building. *Id.* Although the report was reliable, the Supreme Court rejected that position, explaining that the Government's "wider evidentiary cast," *id.* at 21, was a call to "ease away" from *Taylor* and its respect for "congressional intent and avoidance of collateral trials," *id.* at 23. The Court instead held that, where a prior conviction for violating a statute with alternative elements was the result of a plea, a court answering the ACCA-predicate question could attempt to identify the element underlying the conviction by consulting the plea-colloquy transcript, the written plea agreement, or "a record of comparable findings of fact adopted by the defendant upon entering the plea." *Id.* at 20. With this information, the Court explained, "a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying the burglary" as generic burglary, "just as"

jury instructions would do in a tried case or a "charging document would do in any sort of case." *Id.* at 21 (quoting *Taylor*, 495 U.S. at 602).

A four-justice plurality thought that the Constitution provided an additional reason for requiring that the ambiguous element underlying a prior conviction in a pleaded case be clarified by a defendant through admission rather than determined by a judge applying the ACCA. *Shepard*, 544 U.S. at 24–26. The plurality noted that since *Taylor*, the Court had held in *Jones v. United States*, 526 U.S. 227 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that the Constitution requires a jury, not a judge, to find any fact subjecting the defendant to a greater statutory penalty (with the exception that a judge could find the fact of conviction). *See Shepard*, 544 U.S. at 24. The plurality was concerned that if a court answered the ACCA-predicate question by finding facts not admitted by the defendant, the court might very well abridge the defendant's Sixth and Fourteenth Amendment rights. *See id.* at 25–26; *cf. id.* at 28 (Thomas, J., concurring in part and in the judgment) (explaining that "broadening the evidence judges may consider when finding facts under *Taylor* . . . would not give rise to constitutional doubt, as the plurality believes," but instead "constitutional error").

Since *Shepard*, a majority of the Supreme Court has recognized this constitutional concern. In *Descamps v. United States*, the Court explained that if a sentencing court were to answer the ACCA-predicate question by "try[ing] to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct," there would be friction with the Sixth Amendment's promise that "a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt." ___ U.S. ___, ___, 133 S. Ct. 2276, 2288 (2013). And just last year the Court reiterated, "a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense. . . . He can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." *Mathis v. United States*, ___ U.S. ___, ___, 136 S. Ct. 2243, 2252 (2016).

In sum, the Supreme Court has restricted federal district courts tasked with answering the ACCA-predicate question to first the statutory definition of the prior offense, and, if that definition is phrased in the alternative, to limited evidence, because of the ACCA's text and

legislative history and because of likely conflict with the Constitution were the evidentiary restrictions absent.

We think that the legislative history and constitutional concerns apply with equal force when a sentencing court undertakes the different-occasions inquiry. Congress's desire to avoid mini-trials almost assuredly covers not only proceedings to answer the ACCA-predicate question but also proceedings to answer the different-occasions question. Indeed, because facts relevant to the different-occasions inquiry, such as the time and location of the prior offense, are most often not elements of the offense, a proceeding to answer the different-occasions question may well be more extensive than one to answer the ACCA-predicate question. *See United States v. Dantzler*, 771 F.3d 137, 143–44 (2d Cir. 2014). Notwithstanding this practical concern, we acknowledge that there is some tension between the text and the legislative history. We do not here have the textual hook that *Taylor* used. As opposed to the ACCA's language pertaining to the predicate question, its different-occasions language does focus on the defendant's conduct: it asks courts to determine whether prior offenses were "committed" on different occasions. *See* 18 U.S.C. § 924(e)(1).

What most convinces us, then, that *Taylor* and *Shepard*'s evidentiary restrictions extend to the different-occasions question is the Supreme Court's expressed concern over a judge finding facts that become the basis of an ACCA enhancement. "Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction." *Descamps*, 133 S. Ct. at 2288. Just so with the different-occasions question: a sentencing court's finding that prior violent felonies were "committed on occasions different from one another" can be as dispositive of an ACCA enhancement as finding that a conviction is a third ACCA predicate. (Indeed, this is that case.) So if a sentencing judge, in answering the different-occasions question, became the trier of fact regarding when and where the prior offenses occurred, that procedure would raise the very constitutional concern identified in *Shepard* and reaffirmed in *Descamps* and *Mathis*.

The *Taylor-Shepard* approach quells this constitutional concern. Under the framework of those cases, a judge is restricted to those facts that "necessarily" underlie the prior conviction,

*Shepard*, 544 U.S. at 20–21, *i.e.*, those facts necessarily determined beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant, *see Descamps*, 133 S. Ct. at 2288. Thus, under *Taylor* and *Shepard*, a sentencing judge is not finding facts in the first instance, but merely identifying findings or admissions that were previously made under constitutional safeguards.

Accordingly, we hold that *Taylor* and *Shepard*'s limitations on the evidentiary sources and information that a federal district court may consider in determining whether a prior conviction is a predicate under the ACCA also apply when the court determines whether prior offenses were "committed on occasions different from one another" under the ACCA.

Not only does Supreme Court precedent compel this conclusion, but our holding is consistent with that of our sister circuits (save, perhaps, one). *See United States v. Dantzler*, 771 F.3d 137, 139 (2d Cir. 2014); *Kirkland v. United States*, 687 F.3d 878, 886 & n.9 (7th Cir. 2012); *United States v. Boykin*, 669 F.3d 467, 472 (4th Cir. 2012); *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010); *United States v. Thomas*, 572 F.3d 945, 950 (D.C. Cir. 2009); *United States v. Fuller*, 453 F.3d 274, 279 (5th Cir. 2006); *United States v. Harris*, 447 F.3d 1300, 1305 (10th Cir. 2006); *United States v. Taylor*, 413 F.3d 1146, 1157 (10th Cir. 2005). *But see United States v. Evans*, 738 F.3d 935, 936 (8th Cir. 2014) ("[W]e have rejected similar Sixth Amendment arguments challenging the information the district court considers when determining the specific dates on which the offenses occurred." (citing *United States v. Richardson*, 483 F. App'x 302, 305 (8th Cir. 2012))); *Richardson*, 483 F. App'x at 305 & n.3 (explaining that *Shepard*'s evidentiary restrictions are not applicable in determining whether offenses were committed on different occasions).

The Government, citing *United States v. Thomas*, 211 F.3d 316 (6th Cir. 2000), and *United States v. Burgin*, 388 F.3d 177 (6th Cir. 2004), argues that our published precedents are contrary to what we have just concluded. We disagree. It is true that in *Thomas* we (foot)noted that *Taylor*'s framework did not extend to the different-occasions question. *See* 211 F.3d at 318 n.3. And it is also true that published precedent generally binds later panels. *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016) *abrogated on other grounds by Beckles v. United States*, ___ U.S. ___, 137 S. Ct. 886 (2017).

But we do not adhere to published precedent when "an intervening decision of the United States Supreme Court requires modification of our prior decision." *Id.* And *Shepard* fits the bill. That post-*Thomas* decision did more than extend *Taylor*'s categorical approach to situations where prior convictions rested on guilty pleas. When read in light of *Descamps* (and *Mathis*), *Shepard* harnessed *Apprendi* to back *Taylor*'s categorical approach. *Shepard*, 544 U.S. at 24–26 (plurality opinion); *Descamps*, 133 S. Ct. at 2288 (discussing constitutional implications of non-categorical approach and relying on *Shepard* plurality opinion). Indeed, we have previously suggested that *Thomas* was "appropriate for reconsideration" given "*Shepard* and its progeny." *United States v. Barbour*, 750 F.3d 535, 543 n.1 (6th Cir. 2014). Taking our prior advice, we find that, to the extent *Thomas* conflicts with the limitations *Shepard* sets on determining an ACCA enhancement—whether on the predicate-conviction or different-occasions question—*Thomas* is abrogated by Supreme Court precedent.

As for *Burgin*, which also predated *Shepard*, there we answered a related but different question than the one presented here. In *Burgin* we held that, consistent with *Apprendi*, a sentencing judge may answer the question of whether prior offenses were "committed on occasions different from one another." *See* 388 F.3d at 183 ("[T]he issue before the Court is whether this 'different occasions' language is a fact, 'other than the fact of a prior conviction,' which is subject to the protections outlined in *Apprendi*."); *see also id*. at 184, 186. And to the extent that answering the different-occasions question requires a sentencing judge to identify the who, when, and where of the prior offenses, nothing we say here precludes a judge from doing so. We only hold that in identifying those facts, a sentencing judge is constrained to reviewing evidence approved by *Taylor* and *Shepard*.

The Government also argues that the "different[-]occasions inquiry requires an analysis of facts" while the "sole" purpose of the *Taylor-Shepard* framework is to determine elements of the prior offense.

We agree with the Government that the function of the categorical approach and its modified helper is to determine which elements, not which facts, underlie a prior conviction. But identifying the function of the categorical approach does not answer the critical question: why has the Supreme Court prohibited courts applying the ACCA from considering all but a limited

class of documents when identifying elements?  As we have explained, a substantial part of the answer lies in the need to avoid mini-trials, with the attendant logistical concerns and constitutional risks.  And, as we have said, that concern also warrants limiting district courts answering the different-occasions question to those sources approved by *Taylor* and *Shepard*.

The Government also raises a practical argument.  It asks, how can a district court answer the different-occasions question if it is "blinded" to the evidence it needs to make that determination by *Taylor* and *Shepard*'s restrictions?

We recognize that in some cases *Taylor* and *Shepard* evidence will not be sufficient for a district court to determine that prior offenses occurred on different occasions while a broader swath of evidence would permit the determination.  But a similar practical argument was raised and rejected in *Shepard*.  There, it was argued that a police report, "free from any inconsistent, competing evidence," would have reliably shown that the defendant had burglarized a building (as the ACCA's burglary predicate required), whereas, absent the report, it was (likely) impossible to identify which of several alternatives was the basis of the prior conviction.  *See Shepard*, 544 U.S. at 17–18, 22; *United States v. Medina-Almaguer*, 559 F.3d 420, 425 (6th Cir. 2009).  This concern, the Court explained, was not "sufficient justification for upsetting precedent," particularly as *Taylor*'s evidentiary limitation "was the heart of [that] decision." *See id.* at 23.  The Court further noted that "time has enhanced even the usual precedential force" of *Taylor* because in the intervening fifteen years, Congress had made no change to the statute. *Id*. In reaching our decision based on the same reasoning, we likewise respect precedent.

Finally, at oral argument, the Government relied heavily on *Nijhawan v. Holder*, 557 U.S. 29 (2009), to argue that it would be improper to extend *Taylor* and *Shepard*'s restrictions to the different-occasions inquiry.

*Nijhawan* sheds little light on the issue before us.  There, the Supreme Court found that an immigration judge was not limited to *Taylor*'s categorical approach in determining that an alien had a prior felony conviction involving fraud or deceit causing a $10,000 or more loss. *Id.* at 32.  But, significantly, "a deportation proceeding is a civil proceeding," *id.* at 42, so the Sixth and Fourteenth Amendment concerns that animate our decision were not present in *Nijhawan*.

Indeed, in response to the argument that *Taylor* and *Shepard* should apply because the immigration judge's loss-amount determination could lead to an increased sentence in a later criminal proceeding, the Government conceded that it would have to prove the loss amount beyond a reasonable doubt in the later criminal case. *Id.* at 40. And that concession "eliminat[ed] any constitutional concern." *Id.*

In short, we find that in determining whether prior offenses were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), a sentencing court may only rely on the evidentiary sources and information approved by the Supreme Court in *Taylor* and *Shepard*.

**B.**

Remaining is to apply this rule to the facts of this case: are the times and locations recited in the bills of particulars filed in King's 2002 cases within the scope of information and sources approved by the Supreme Court in *Taylor* and *Shepard*? We think not.

To start with, the documents at issue are not in the list of *Shepard*-approved materials unless they are properly considered "charging documents" or "comparable judicial sources" as those terms are used in *Shepard*. 544 U.S. at 26. We can also employ the constitutional concerns espoused in *Apprendi*, 530 U.S. at 490, to guide our analysis of whether the Ohio bills of particulars are properly considered *Shepard*-approved evidence. As we explained, if a sentencing judge were the first to determine that allegations by the state prosecutor in the three bills of particulars were facts, the very constitutional concern identified in *Shepard*, *Descamps*, and *Mathis* would arise. So we need only decide whether King necessarily admitted the times or locations alleged in the bills (thereby eliminating the constitutional concern).

It is improper to infer that King necessarily admitted the when and where of the 2002 offenses as set forth in the bills of particulars when he pleaded guilty. To start, there are no transcripts of King's plea colloquies or copies of written plea agreements reflecting any such admissions. And the time and place of King's robberies or attempted robberies were not elements of those offenses. The statutory language corresponding to King's convictions makes this apparent. *See* Ohio Rev. Code § 2911.02(a)(1) (West 2002) ("No person, in attempting or

committing a theft offense or in fleeing immediately after the attempt or offense, shall . . . [h]ave a deadly weapon on or about the offender's person or under the offender's control."); *Id.* § 2911.02(a)(3) ("No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall . . . [u]se or threaten the immediate use of force against another."). Notably, too, none of the three indictments recite the time and place of the offenses, and no one disputes that King could have pled guilty to the charges in the indictments without requesting the bills of particulars. It is thus improper to infer that King necessarily admitted the time or place of his 2002 offenses. *Descamps*, 133 S. Ct. at 2288 ("[T]he only facts [a sentencing] court can be sure the jury [found unanimously and beyond a reasonable doubt] are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances."); *see also Mathis*, 136 S. Ct. at 2248. That finding, coupled with today's holding, leads to the conclusion that the alleged times and locations as recited in the bills of particulars were not information the district court was permitted to consider in enhancing King's sentence under the ACCA. *See Descamps*, 133 S. Ct. at 2288 ("[A]s *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment.").

The Government implies that, in limiting a court applying the ACCA to what King necessarily admitted, we apply *Shepard*'s restrictions too strictly. It stresses that in *Shepard*, the Supreme Court stated that courts making the ACCA-predicate determination may consider "the terms of the charging document" (which, says the Government, includes bills of particulars).

The Government is correct about what *Shepard* said. *See* 544 U.S. at 26. But to hold that a court answering the different-occasions question can consider anything that might be classified as a charging document would be to unmoor *Shepard*'s reference to "charging documents" from its reasoning. The list of approved documents was compiled with a focus on what the defendant "necessarily" admitted in pleading guilty—not the other way around. Indeed, *Shepard* made clear that the task was to identify whether a prior conviction "necessarily" rested on the elements of the generic offense:

We hold that enquiry under the ACCA *to determine whether* a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense *is* limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

544 U.S. at 26 (emphases added); *see also id.* at 20–21 (explaining that with a plea-colloquy transcript, the written plea agreement, or a comparable record, "a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying the burglary as generic").

But, one might argue, if the Supreme Court had truly wanted to limit courts making the ACCA-predicate determination to those facts necessarily admitted by the defendant or necessarily found by a jury, then why reference "charging documents" generally, rather than the necessary facts or elements within the charging documents? The answer, we think, lies in the issue presented to the Court in *Shepard*. Insofar as a sentencing court's task is to identify which *elements* underlie a prior conviction, the terms of the charging document will always be appropriate to consider: a conviction necessarily means the elements—but not "superfluous facts," *Descamps*, 133 S. Ct. at 2288—charged in the indictment were found by a jury or admitted by the defendant.

This understanding of *Shepard* is not new. We have previously read *Shepard* to permit courts to consider only those facts that a defendant necessarily admitted in pleading guilty. *See United States v. Medina-Almaguer*, 559 F.3d 420, 424 (6th Cir. 2009) ("[*Shepard*] requires a judicial record that identifies the facts a defendant 'necessarily admitted' in entering a guilty plea—as *Shepard* itself demonstrates."). And the Second Circuit also read *Shepard* this way in finding that a bill of particulars is not *Shepard*-approved evidence. *See United States v. Rosa*, 507 F.3d 142, 154 (2d Cir. 2007) ("We are not convinced, notwithstanding the *Shepard* Court's reference to 'charging document[s]' as potentially reliable indicia of the nature of prior convictions, that the Bill is therefore '*Shepard* evidence' for our purposes." (alteration in original)).

The Government implies that we interpreted *Shepard* differently in *United States v. Jones*, 453 F.3d 777 (6th Cir. 2006). It is true that in *Jones* we emphasized the "reliability" of

the document: "Complaints are judicial documents, filed under oath and submitted in furtherance of formal prosecution. They bear, accordingly, substantially greater indicia of reliability than mere police reports, which are not filed in court, are not sworn to, and are developed for an investigatory purpose." *Id.* at 780.

To the extent that *Jones* might be read as making the reliability of the complaint dispositive of whether it was a *Shepard*-approved source, other circuits disagree. *See Rosa*, 507 F.3d at 155 ("[W]e do not think, as the *Jones* court seemed to indicate, that the question before us is whether the unsworn Bill of Particulars bears indicia of reliability. The dispositive question is whether the plea necessarily rested on the fact that the crime to which [the defendant] pleaded involved the use or carrying of a firearm." (alterations, internal quotation marks, and citation omitted)).[1]

We read *Jones* differently. *Jones* relied on our decision in *United States v. Kappell*, 418 F.3d 550, 560 (6th Cir. 2005), to conclude that a complaint may be considered under the *Shepard* framework. *Jones*, 453 F.3d at 780. This is significant because the defendant in *Kappell* had "stipulated that the facts recited in the complaint were correct for purposes of entering his plea." 418 F.3d at 558. Thus, *Kappell*, and therefore *Jones*, suggests that a district court answering the different-occasions question may rely on facts in a complaint—if those facts were later admitted by the defendant. Here, there are no such admissions in the record as to the times or locations of the offenses.

Further, *Jones* does not answer the question before us because *Jones* found that a Tennessee criminal complaint is a *Shepard*-approved source, whereas this case involves Ohio bills of particulars. The distinction matters at least because the Government has previously conceded that an Ohio bill of particulars is not proper for consideration under *Shepard*. *See United States v. Stafford*, 721 F.3d 380, 397 (6th Cir. 2013).

---

[1]In attempting to put distance between *Jones* and the cases before them involving a predicate-offense determination, the panels in *United States v. Wells*, 473 F.3d 640, 647 n.5 (6th Cir. 2007), and *Medina-Almaguer*, 559 F.3d at 424, confined *Jones* to the different-occasions inquiry without explaining why the constitutional concerns present in making the predicate-offense determination would not apply to the different-occasions inquiry.

In sum, King did not necessarily admit the times and locations asserted in the three bills of particulars when he pleaded guilty in 2002. As such, we find that the district court erred in considering the times and locations asserted in the bills in determining that King's prior offenses were committed on occasions different from one another.

## C.

This leaves what the Government has indicated is its weakest argument: that even when limited to the information in the indictments and the journal entries, it is more likely than not that King's offenses were committed on different occasions. Given that King's convictions involve seven victims (Lundberg, Mariano, and five from the aggravated-robbery case), the Government argues as follows: "[n]othing in the record in any way suggests that King robbed all [seven] victims simultaneously, attempting and failing with some, succeeding with others, working alongside different accomplices depending on the victim, and using a deadly weapon only against [five] of them." Thus, the Government concludes, "[i]t strains credulity and defies common sense to read even the limited version of the record in that manner."

We disagree. The Government's argument ignores the fact that the indictments in the Lundberg and the Mariano cases charged the same two defendants with committing the same two offenses on the same day. In other words, those two indictments are indistinguishable save for the victim. And King was not charged and convicted of the Lundberg and the Mariano offenses in two different venues, a fact that might indicate that those offenses occurred separately. *See State v. Hampton*, 983 N.E.2d 324, 328–29 (Ohio 2012) (providing that, under Ohio law, venue must be proven beyond a reasonable doubt). Thus, even if the Government is correct that the offenses charged in the five-victim case occurred on an occasion different from the Lundberg and Mariano offenses, nothing that can be considered under *Shepard* permits the Lundberg and Mariano offenses to be deemed separate. *See Kirkland*, 687 F.3d at 887 ("[W]e agree with the district court that the 'factually sparse' record sheds little light on whether the 1985 offenses occurred on the same occasion. The charging informations for the burglary and robbery establish that Kirkland and his co-defendants committed both offenses on the same day, but there is no information as to the timing or sequence of events."). Similarly, no *Shepard*-approved evidence shows that the offenses charged in the five-victim case did not happen at the same time

in the same place.  At most then, the Government can show that, on February 18, 2002, King committed violent felonies on two different occasions.  The ACCA's enhancement, however, requires three. *See* 18 U.S.C. § 924(e)(1).

## IV.

For the foregoing reasons, we hold that a federal district court deciding whether prior offenses were "committed on occasions different from one another" as that phrase is used in the Armed Career Criminal Act is limited to *Shepard*-approved evidentiary sources that contain facts necessarily found beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant.  Under that rule, it was error for the district court to consider the times and locations alleged in King's bills of particulars.  And the Government failed to otherwise meet its burden to show that the offenses were committed on different occasions.  We thus VACATE the district court's judgment and REMAND for resentencing consistent with this opinion.