RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 15-6395

*v.*

RODNEY SOUTHERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:14-cr-00005-1—Curtis L. Collier, Chief District Judge.

Decided and Filed:  May 8, 2017[*]

Before:  SUHRHEINRICH, BATCHELDER, and STRANCH, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Dennis C. Belli, Columbus, Ohio, for Appellant.  William A. Roach, Jr., UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

SUHRHEINRICH, J., delivered the opinion of the court in which BATCHELDER and STRANCH, JJ., joined.  STRANCH, J. (pg. 12), delivered a separate concurring opinion.

_____

### OPINION

_____

SUHRHEINRICH, Circuit Judge.  Defendant-Appellant Rodney Southers appeals the district court's finding at sentencing that he qualified as an armed career criminal under the

---

[*]This decision was originally filed as an unpublished opinion on May 8, 2017.  The court has now designated the opinion for full-text publication.

Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and claims, for the first time on direct appeal, that he had ineffective counsel at sentencing. For the following reasons we affirm the district court's finding, and decline to entertain Defendant's Sixth Amendment claim.

**I.**

On January 21, 2014, Defendant was arrested on an outstanding warrant. Pursuant to a search incident to arrest, police found on Defendant's person seventeen rounds of ammunition. An Alcohol, Tobacco and Firearms task force officer then filed a criminal complaint against Defendant in the United States District Court for the Eastern District of Tennessee alleging Defendant was a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Evidence was then presented to a grand jury, which charged Defendant on this offense. Defendant pleaded guilty without a plea agreement.

The probation office classified Defendant as an armed career criminal under the ACCA due to Defendant's two prior robbery convictions and one prior attempted-aggravated-robbery conviction. Based on this designation, Defendant's sentencing range was enhanced to a range of fifteen years to life imprisonment.

At sentencing, Defendant's only objection was that his convictions for robbery and attempted-aggravated robbery on May 24, 2000, should be considered a single event for purposes of the ACCA. In response, the government produced the indictments and judgments for each predicate offense. Each indictment listed a distinct business as the victim, and the corresponding judgments which cross-referenced the relevant indictment. As part of an effort to persuade the court that these crimes were a single event or part of the same course of conduct, Defendant testified at sentencing. He stated that he and his partner "planned to hit two stores," first "the Golden Gallon, and then . . . the Favorite Market."

The district court found that, despite possibly being connected by one conspiratorial agreement, the two robberies were "legally and factually distinct," and therefore were "properly considered separate offenses for purposes of the [ACCA]." However, the court did grant the government's motion to reduce Defendant's sentence pursuant to U.S.S.G. § 5K1.1 and

18 U.S.C. § 3553(e), and ultimately sentenced Defendant to 110 months' imprisonment. Defendant timely appealed.

## II.

On appeal, Defendant alleges two errors by the district court in applying the ACCA. First, Defendant argues, for the first time on appeal, that his Tennessee robbery convictions were improperly found to be "violent felonies" for purposes of the ACCA. Second, he reiterates his objection that his two May 24, 2000 predicates should be considered one predicate for purposes of the ACCA. Both arguments fail.

## A.

Although we generally review a district court's determination that a prior conviction qualifies as a "violent felony" under the ACCA de novo, where, as here, a defendant fails to make this objection to the district court, we review for plain error. *United States v. Anderson*, 695 F.3d 390, 399 (6th Cir. 2012). To prevail under this standard, Defendant must establish "(1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quotation marks and citation omitted). We "may then exercise [our] discretion to notice [this] forfeited error, but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* Defendant fails here at the first step.

If a felon convicted of unlawfully possessing ammunition also has three previous convictions for, among other things, "violent felonies," the ACCA provides for a mandatory sentencing enhancement. 18 U.S.C. § 924(e)(1). The ACCA defines violent felony as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B). The meaning of "physical force" is a matter of federal law, and is defined as "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 138, 140 (2010). However, the meaning, scope, and elements of the predicate violent felonies are matters of state law. *Id.* at 138.

In determining whether a prior conviction qualifies as violent felony under the ACCA, the courts use the "categorical approach," examining only "the statutory definition of the offense and not the particular facts underlying the conviction." *Anderson*, 695 F.3d at 399. If it is possible to violate the statute both in a manner that qualifies as violent felony and in a manner that does not—i.e., a divisible statute—the court may "consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction." *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). However, if all modes of violating a divisible statute constitute qualifying offenses, the statute is categorical, and it is unnecessary to look beyond its face. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013).

Under Tennessee law, robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. Although robbery in Tennessee can be committed in two manners, our inquiry into whether it is a categorically violent felony is made easy due to the fact that this Court has already answered this question.

In *United States v. Mitchell*, we held that both variants of violating the statute constitute violent felonies, obviating our need to look beyond the face of the statute. 743 F.3d 1054, 1059-60 (6th Cir. 2014). There we examined Tennessee Supreme Court precedent interpreting both "violence" and "putting the person in fear" under the statute. We noted that in *State v. Fritz*, the Tennessee Supreme Court held that "violence" under the Tennessee robbery statute means "physical force unlawfully exercised so as to injure, damage or abuse." 19 S.W.3d 213, 214 (Tenn. 2000). In *State v. Taylor*, the Tennessee Supreme Court similarly held that "fear constituting an element of robbery is a fear of bodily injury and of present personal peril from violence offered or impending." 771 S.W.2d 387, 398 (Tenn. 1989) (interpreting Tennessee's repealed robbery statute, but which uses the same language for the element at issue here in the new robbery statute). Therefore, because both modes of violating Tennessee's robbery statute require use or threat of physical force, as defined by federal law, Tennessee robberies are categorically violent felonies for purposes of the ACCA. *Mitchell*, 743 F.3d at 1060.

Defendant argues that *Mitchell* is not controlling because the Supreme Court's decision in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), is an inconsistent intervening Supreme Court decision that allows us to revisit the issue.[1]  Appellant's Br. at 21 (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (holding that while one panel of this Court may not overrule a prior published opinion of a previous panel, it may disregard an earlier published opinion if an inconsistent decision of the United States Supreme Court requires modification of the earlier decision)).  In applying the categorical approach to determine whether a state conviction for drug trafficking qualified as an aggravated felony under the Immigration and Nationality Act, the *Moncrieffe* Court stated that courts must "focus on the minimum conduct criminalized by the state statute."  133 S. Ct. at 1684.  Furthermore, this exercise "is not an invitation to apply 'legal imagination' to the state offense; there must be a 'realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'"  *Id.* at 1684-85 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).  To make this showing, a defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.  In applying this analysis to the case at hand, the *Moncrieffe* Court looked to two Georgia intermediate appellate court decisions applying a Georgia drug trafficking statute.

Defendant alleges that, per *Moncrieffe*, the *Mitchell* court should have examined intermediate state appellate decisions of the Tennessee robbery statute to "discern the 'least of the acts criminalized' under the Tennessee robbery statute."  Appellant's Br. at 17 (quoting *Moncrieffe*, 133 S. Ct. at 1684).  Defendant directs our attention to three Tennessee intermediate court cases wherein, he argues, the courts upheld the application of the Tennessee robbery statute to actions that that do not meet the federal definition of use, attempted use, or threatened use of "physical force." *See State v. Crenshaw*, No. W2014-01367-CCA-R3-CD, 2015 WL 2447717 (Tenn. Crim. App. May 22, 2015) (affirming defendant's robbery conviction where defendant pushed the store manager up against a wall with a trash can filled with merchandise defendant was attempting to steal, the two tussled over the trash can, and the store manager believed

---

[1]Although *Moncrieffe* was published before *Mitchell*, *Mitchell* did not address *Moncrieffe*.

defendant was going to hit her, but ultimately did not); *State v. Powell*, No. E2009-01301-CCA-R3-CD, 2010 WL 2219620 (Tenn. Crim. App. June 2, 2010) (affirming defendant's robbery conviction without evidence of pain or injury when defendant pushed a sales clerk in the chest with his forearm, reached into the cash register, took cash, and fled); *State v. Stitts*, No. W2002-01903-CCA-R3-CD, 2004 WL 345509 (Tenn. Crim. App. Feb. 24, 2004) (affirming defendant's robbery conviction for reaching into a cash register and jerking his arm loose from the store clerk's grip, despite the clerk's testifying that she was not hurt and did not feel threatened by defendant's actions).

The Sixth Circuit's recent decision in *United States v. Patterson* makes clear that *Moncrieffe* and its "realistic probability" inquiry applies in the ACCA context. *See United States v. Patterson*, 853 F.3d 298, 302 (6th Cir. 2017). However, Defendant's argument still fails. If anything, the fact that *Moncrieffe* only looked to state intermediate appellate court decisions supports the adage that after a state supreme court's decisions, "intermediate [state] appellate court decisions constitute the next best indicia of what state law is." *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (quotation marks omitted). As we noted in *Mitchell*, "in determining the *meaning or scope* of robbery, we are bound by the Tennessee Supreme Court's interpretation, including its guidance on the elements of the crime." 743 F.3d at 1059 (emphasis added) (citing *Johnson*, 559 U.S. at 138); *see also Patterson*, 853 F.3d at 303 (noting that the Ohio Supreme Court is the authoritative interpreter of Ohio law). To the extent that these lower Tennessee court decisions apply the Tennessee robbery statute in a manner inconsistent with the federal definition of a violent felony, we believe that such applications are also inconsistent with Tennessee Supreme Court precedent. *See Mitchell*, 743 F.3d at 1059. Consequently, identification of these cases does not amount to demonstrating the "realistic probability" *Moncrieffe* and *Duenas-Alvarez* call for.

Indeed, the two cases that Defendant points to, where our sister circuits applied the "realistic probability" inquiry in the ACCA context, support this analysis. In concluding that North Carolina's robbery statute does not qualify as a violent felony under the ACCA, the Fourth Circuit in *United States v. Gardner* quoted the North Carolina Supreme Court's definition of "violence" which states that, "Although actual force implies personal violence, the degree of

force used is immaterial." 823 F.3d at 803 (quoting *State v. Sawyer*, 29 S.E.2d 34, 37 (N.C. 1944)). Thus, as the Fourth Circuit held, the intermediate North Carolina court opinions upholding robbery convictions for less than federally defined "physical force," were instances in which intermediate courts *faithfully* applied their state's supreme court precedent. *See id.* at 803-04.

Similarly, in *United States v. Bell*, the Eighth Circuit held that violation of Missouri's second-degree robbery statute is not a violent felony under the ACCA. 840 F.3d 963, 966-67 (8th Cir. 2016). In reaching this conclusion, the court primarily relied on an intermediate Missouri court decision holding that a second-degree robbery conviction could be upheld where the robber made physical contact with the victim, but not sufficient contact to cause pain or injury. *Id.* at 966 (relying on *State v. Lewis*, 466 S.W.3d 629, 632 (Mo. Ct. App. 2015)). However, it appears that the Missouri Supreme Court had yet to comment directly on the meaning of "physical force" under Missouri's second degree robbery statute. Consequently, *Lewis* also was not a case where lower state courts contradicted a state supreme court's definition of a crime that falls squarely within the ACCA's definition of violence. Thus, these cases are distinguishable.

In short, federal courts should look to intermediate state appellate court decisions in determining what is the least conduct criminalized under a state's statute. However, when the state supreme court has defined what this conduct is, the buck stops there, along with our inquiry, as the state supreme court is the ultimate interpreter of its state's law. *See Patterson*, 853 F.3d at 303. Therefore, even after *Moncrieffe* and *Duenas-Alvarez*, *Mitchell* is still controlling, because it applies Tennessee Supreme Court precedent. Defendant has failed to show error, much less plain error.

**B.**

Next, Defendant objects to the district court's ruling that his two May 24, 2000 predicates are distinct for purposes of the ACCA. Appellant's Br. at 22-24. We review the district court's decision that Defendant's offenses were committed on separate occasions under the ACCA de novo. *United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006).

Two offenses are committed on different occasions for purposes of the ACCA if:

(1) "it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins"; (2) "it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense"; *or* (3) "the offenses are committed in different residences or business locations."

*United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012) (quoting *Hill*, 440 F.3d at 297-98)). "Offenses are separate if they meet *any* of these three tests." *Id.* at 503. The government bears the burden of proof to show that the offenses occurred on separate occasions. *United States v. Barbour*, 750 F.3d 535, 546 (6th Cir. 2014). The government must do so through so-called "*Shepard*-approved" documents, which include charging documents from the predicate offenses. *United States v. King*, 853 F.3d 267, 273, 275 (6th Cir. 2017). This includes "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). However, the judge considering imposition of the ACCA might not be the first to determine that the allegations recited in those charging documents are facts. *King*, 853 F.3d at 273.

At sentencing, the government produced the two Tennessee indictments charging Defendant with his May 24, 2000 offenses, and the corresponding judgments. Under the first indictment, Number 230764, grand jurors charged Defendant with attempted aggravated robbery for trying to steal property of the Golden Gallon, a convenience store. Under the second indictment, Number 230761, grand jurors charged Defendant with robbing Favorite Market, also a convenience store. Each judgment cross references the corresponding indictment. Because the judgments and indictments establish that the robberies occurred at two different business locations, the district court did not err in treating them as distinct predicates under the ACCA. *See United States v. Perez*, 477 F. App'x 337, 343 (6th Cir. 2012) (holding that the defendant's prior aggravated robberies were separate because "they occurred at different locations" separated by one-and-a-half miles); *United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993) (holding that defendant's prior armed robbery convictions were separate because they were "against different

victims at different places and at distinctly different times," where they were at distinct businesses and separated by approximately forty-five minutes).

Defendant contends that the *Shepard* documents in this case—indictments and judgments—provide insufficient evidence to determine that his two robberies were different occasions for purposes of the ACCA because they lacked any specific factual findings regarding each robbery. He cites our recent decision in *King* for support. In that case, the defendant pleaded guilty in 2002 to three Ohio indictments charged the defendant with: (1) robbing and kidnapping one Arthur Lundberg on or about February 18, 2002; (2) robbing and kidnapping one David Mariano on or about February 18, 2002; and (3) aggravated robbery against five victims on or about February 18, 2002. *King*, 853 F.3d at 269. Because the indictments did not provide any more details, namely the time and location of the crimes, it was impossible to tell if these were separate occasions by solely looking at the indictments. *See id.* Lacking a plea colloquy or a copy of a written plea agreement, the federal district judge considered the corresponding three Ohio bills of particulars,[2] which provided a more complete picture of the defendant's 2002 crimes, *id.* at 269-70, despite the government's having earlier conceded that an Ohio bill of particulars does not qualify as a *Shepard* document, *id.* at 278 (citing *United States v. Stafford*, 721 F.3d 380, 397 (6th Cir. 2013)). Based on these bills of particulars, the federal district court determined that the defendant's 2002 convictions were all separate occasions for purposes of the ACCA. *Id.* at 270. We reversed, holding that "in determining whether prior offenses were 'committed on occasions different from one another,' 18 U.S.C. § 924(e)(1), a sentencing court may only rely on the evidentiary sources and information provided by the Supreme Court in *Taylor* and *Shepard*." *Id.* at 275.

*King* is distinguishable. There the district court relied on non-*Shepard* documents—the Ohio bills of particulars—because the indictments lacked the information necessary to make a different-occasions finding. Here, the indictments provide the information necessary to determine that Defendant's crimes took place at separate businesses. Under our precedent this was all that was required for the district court to find that Defendant's robberies qualified as

---

[2]Under Ohio law, a bill of particulars is a document authored by the prosecuting Ohio attorney "setting up specifically the nature of the offense charged and the conduct of the defendant which is alleged to constitute the offense." Ohio Rev. Code Ann. § 2941.07.

separate predicates for purposes of the ACCA.  *See Jones*, 673 F.3d at 503 (holding that crimes occur on different occasions if they are "committed in different residences or business locations").  What's more, Defendant *actually admitted under oath* in the federal proceedings that he and his partner "planned to hit two stores," first "the Golden Gallon, and then . . . the Favorite Market."**3**

Thus, the district court did not err in applying the ACCA.

## III.

Finally, Defendant raises an ineffective assistance of counsel claim.  Defendant claims that his attorney's decision to have him testify at sentencing resulted in his receiving a greater sentence.  Appellant's Br. 25-27.

To prevail on an ineffective-assistance-of-counsel claim, a defendant must demonstrate that his trial "counsel's performance (1) 'fell below an objective standard of reasonableness' and (2) was prejudicial, i.e., 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). We generally do not address claims of ineffective assistance of counsel on direct appeal, except in rare cases in which "the record is adequate to assess the merits of defendant's allegations." *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005).

This case does not fall within that narrow exception to the general rule of declining to consider in-effective-assistance-of-counsel claims on direct appeal. Because Defendant's claim is challenging his counsel's strategy on direct appeal, his "counsel has not been afforded an opportunity to answer this charge against him, and the reasons for his [sentencing] strategy lie completely outside the record." *United States v. Hill*, 142 F.3d 305, 308 (6th Cir. 1998). Therefore, review by this court at this time is premature.

---

**3**Although clearly not *Shepard* evidence, to the extent that the district court relied on this testimony, or information in Defendant's PSR, doing so was harmless.  The district court is presumed to have considered all the materials before it and "need not describe in detail or list all of the documents or other evidence it considered." *United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006).

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.

---

**CONCURRENCE**

---

JANE B. STRANCH, Circuit Judge, concurring.  I join this opinion because here the Tennessee Supreme Court directly and in detail addressed the elements of the robbery statute at issue.  This placed contradictory language from state intermediate court decisions in direct conflict with a decision of the highest court in the jurisdiction.  We would have a different case had language from a state supreme court decision been more ambiguous in defining the conduct covered by a statute.  It is a familiar exercise for federal courts to look to state law to determine offense conduct.  No one disputes that if a state supreme court decision clearly conflicts with intermediate court decisions—as in this case—then the state supreme court decision controls.  Outside such head-on conflict, I do not see this case as restricting courts from looking at state intermediate court decisions where they include helpful explanations such as discussions of how to characterize offense conduct.  I write only to note that our decision should not be read as foreclosing continuation of that practical and helpful existing practice.