RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

No. 18-5786

JAMES HENNESSEE,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 1:17-cr-00018-1—Aleta Arthur Trauger, District Judge.

Argued: March 19, 2019

Decided and Filed: July 30, 2019

Before: COLE, Chief Judge; BOGGS and GIBBONS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Michael C. Holley, FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee. **ON BRIEF:** Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Michael C. Holley, R. David Baker, FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee.

 GIBBONS, J., delivered the opinion of the court in which BOGGS, J., joined. COLE, C.J. (pp. 13–26), delivered a separate dissenting opinion.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  James Hennessee pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  The government sought an enhanced penalty under § 924(e)(1) based on Hennessee's three prior convictions for violent felonies.  Hennessee objected on the basis that the government could not prove that two of his prior offenses were committed on different occasions, as required by the Armed Career Criminal Act.  The district court agreed with Hennessee, finding that our precedent precluded its review of non-elemental facts in *Shepard* documents when conducting the different-occasions analysis.  But because a sentencing court may consider non-elemental facts such as times, locations, and victims in *Shepard* documents when conducting the different-occasions analysis, we hold that the district court erred.  The facts of Hennessee's prior convictions—as established in *Shepard*-approved documents—indicate that he committed those violent felonies on occasions different from one another.  Thus, the government proved that Hennessee's prior convictions qualify him for a sentence enhancement as an armed career criminal.  Therefore, we vacate Hennessee's sentence and remand to the district court for resentencing with instructions to apply the enhancement under the Armed Career Criminal Act.

I.

In August 2016, a police officer came across Hennessee in a park in Pulaski, Tennessee.  Hennessee informed the officer that he was on state parole and consented to a search.  The officer searched Hennessee's person and items nearby on the ground.  The officer arrested Hennessee after finding a digital scale, methamphetamine, hydrocodone pills, and a loaded handgun.  On November 8, 2017, the government charged Hennessee with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Hennessee pled guilty on March 13, 2018.

The Probation Office prepared a presentence investigation report ("PSR") and recommended that the district court sentence Hennessee as an armed career criminal based on his

prior criminal convictions. The PSR identified three prior convictions—one in Limestone County, Alabama and two in Davidson County, Tennessee—that qualified as violent felonies under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Based on these predicate offenses, the PSR recommended that the district court impose the mandatory minimum sentence of fifteen years for a defendant with three predicate violent felonies under the ACCA.

The first predicate offense stemmed from Hennessee's 2015 convictions for manufacturing a controlled substance and second-degree assault in Limestone County, Alabama. Each conviction would independently qualify as an ACCA predicate, but the Probation Office could not conclusively determine whether the two offenses were "committed on occasions different from one another," as required under § 924(e)(1). Consequently, the Probation Office treated the two Alabama convictions as a single predicate offense.

The second and third ACCA predicates stemmed from Hennessee's 2006 convictions for aggravated robbery and attempted aggravated robbery in Davidson County, Tennessee. The indictment charged Hennessee with committing both offenses on March 3, 2005 in Davidson County. Hennessee pled guilty to both, and the judgments of conviction were entered on February 23, 2006. Unlike in the Limestone County case, the Probation Office could discern facts in the Davidson County record that indicated Hennessee committed the offenses on different occasions. A review of the transcript reveals that, during Hennessee's plea colloquy, the government proffered a factual basis for the guilty plea and described the timing and locations of the offenses as follows:

> [T]he State's witnesses would be available and the testimony would be that in the early morning hours, around five o'clock -- four-thirty or five o'clock -- in the morning of March 3rd, 2005 Mr. Hennessee and his codefendant Mr. Reeves -- first individual approached was the gentleman in Count Two Mr. Alah Basabi (ph.), who would testify that he was approached by two individuals, that he would identify as Mr. Hennessee and Mr. Reeves, in the parking lot of his apartment, which was here in Davidson County, Tennessee (unintelligible) 960 Edmondson Pike.
>
> . . .

> And just a few minutes later a Ms. Terry Wainwright was, actually, stopped at a gas station . . . Mapco Express on Smith Springs Road, getting gas about five-twenty a.m. when two individuals approached her.
>
> . . .
>
> Both these events occurred here in Davidson County.

DE 24-3, Davidson County Plea Tr., Page ID 94–95.[1]  At the end of the government's summary, the court asked Hennessee whether the facts as described by the government were true, and Hennessee said yes.[2]  Based on Hennessee's 2006 plea colloquy, the Probation Office concluded that the two Tennessee offenses were committed on occasions different from one another.  Thus, it recommended that the district court find Hennessee had the requisite three ACCA predicate offenses to qualify as an armed career criminal.

Hennessee objected, arguing that the government could not show that he committed the Tennessee offenses on different occasions.  Hennessee reasoned that our precedent prohibits sentencing courts from considering any "features of the prior conviction" other than the "*elements* of the prior offense," and the times and locations on which the government relied were not elements of his prior offenses under Tennessee law.  DE 18, Hennessee Sentencing Position, Page ID 29.  Thus, he argued that the district court could *only* look to the elements of his offenses when conducting its different-occasions analysis.

The district court agreed with Hennessee, concluding that Supreme Court and Sixth Circuit precedent prohibited it from considering any "non-elemental facts"[3] when determining

---

[1]There are some discrepancies between the victims' names listed in the indictment and at the plea colloquy. Count 1 of the indictment charged Hennessee with aggravated robbery of "Jerry Wainwright," and Count 2 charged him with attempted aggravated robbery of "Mudhafar J. Aljashami." DE 24-1, Davidson County Indictment, Page ID 81–82. We can discern that "Alah Basabi" is the phonetic spelling of Aljashami and that "Jerry" Wainwright and "Terry" Wainwright are the same individual. Regardless, these spelling errors do not alter our analysis or the fact that Hennessee pled guilty to each offense charged in the indictment. We are looking at two different victims here: Aljashami (or Alah Basabi) in the attempted aggravated robbery and Wainwright (Terry or Jerry) in the aggravated robbery.

[2]The court specifically asked Hennessee "Are those facts basically true?" DE 24-3, Davidson County Plea Tr., Page ID 95. We do not read "basically" as qualifying *how true* the facts were or affecting Hennessee's admission of their truth.

[3]As defined by the Supreme Court, "non-elemental facts" are "amplifying but legally extraneous circumstances," as distinct from the elements of a crime. *Descamps v. United States*, 570 U.S. 254, 270 (2013).

whether Hennessee's Tennessee offenses were committed on different occasions. Because the elements of Hennessee's aggravated robbery and attempted aggravated robbery convictions are silent as to the time and location of each offense, the district court concluded that it could not designate Hennessee as an armed career criminal. The court perceived some tension among cases in the Sixth Circuit regarding what sources and facts a court may consider when determining whether prior offenses were committed on different occasions, stating that "at some point the Sixth Circuit's going to have to clarify this," because district courts "need clarification" on this issue. DE 28, Sentencing Tr., Page ID 128–131.

The district court found that Hennessee was not subject to the penalty enhancement under the ACCA and sentenced him to 110 months in prison, which both parties agreed was the appropriate sentence in the absence of an armed-career-criminal designation. The district court entered its judgment on July 18, 2018. The government timely appealed, arguing that Hennessee qualifies as an armed career criminal and that the district court erred in declining to consider non-elemental facts in conducting the different-occasions analysis.

II.

The issues before us are twofold: (1) whether a sentencing court may consider non-elemental facts in its ACCA different-occasions analysis, and (2) whether Hennessee's prior Tennessee offenses were committed on occasions different from one another. We review both questions of law *de novo*. *United States v. Southers*, 866 F.3d 364, 369 (6th Cir. 2017) ("We review the district court's decision that Defendant's offenses were committed on separate occasions under the ACCA *de novo*."); *United States v. King*, 853 F.3d 267, 270 (6th Cir. 2017) ("We review *de novo* the issue of what evidence a court may rely on when deciding whether prior offenses were 'committed on occasions different from one another' as that phrase is used in the ACCA.").

---

Elemental facts are "those constituting elements of the offense" and "the only facts the court can be sure the jury so found." *Id.*

III.

The ACCA imposes a mandatory minimum of fifteen years for any person who, in relevant part, "violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . committed on occasions different from one another." 18 U.S.C. § 924(e)(1). This requires two separate inquiries: (1) whether prior convictions qualify as ACCA-predicates, and (2) whether such offenses were committed on different occasions. The case before us concerns only the different-occasions analysis.

The district court concluded that Supreme Court and Sixth Circuit precedent prohibited it from looking to "non-elemental facts"—here, the times and specific locations of Hennessee's Tennessee offenses—when determining whether two prior felonies were committed on different occasions. Under this approach, the district court refused to consider the facts as described during Hennessee's plea colloquy. Limiting itself to only elemental facts in *Shepard* documents, the district court concluded that the government did not prove that Hennessee committed the Tennessee offenses on different occasions. The district court thus declined to apply the ACCA enhancement to Hennessee's sentence.

The district court implored us to clarify the law of the Sixth Circuit as it pertains to evidentiary-source limitations in the different-occasions analysis. And with this opinion, we do. We now clarify that *King* adopted the *Taylor-Shepard* evidentiary-source restriction for the different-occasions analysis and created no limitation on a sentencing court's consideration of non-elemental facts contained within *Shepard* documents. *See King*, 853 F.3d 267. This reading of *King* accords with the approach adopted by the Second, Fourth, Fifth, Seventh, Tenth, Eleventh, and D.C. Circuits. *See, e.g.*, *United States v. Bordeaux*, 886 F.3d 189, 196 (2d Cir. 2018); *Dantzler*, 771 F.3d at 143, 145; *United States v. Span*, 789 F.3d 320, 326 (4th Cir. 2015); *Kirkland v. United States*, 687 F.3d 878, 883 (7th Cir. 2012); *United States v. Boykin*, 669 F.3d 467, 471 (4th Cir. 2012); *United States v. Sneed*, 600 F.3d 1326, 1333 (11th Cir. 2010); *United States v. Thomas*, 572 F.3d 945, 950 (D.C. Cir. 2009); *United States v. Fuller*, 453 F.3d 274, 279 (5th Cir. 2006); *United States v. Taylor*, 413 F.3d 1146, 1157–58 (10th Cir. 2005). These courts have all previously determined that only *Shepard* documents may be examined when conducting

a different-occasions analysis. They have not, however, imported an elemental-facts-only limitation into the different-occasions analysis, nor do we do so today.

In *United States v. King*, we adopted the *Taylor-Shepard* source limitation and applied it with equal force to the ACCA's different-occasions analysis. *King*, 853 F.3d at 269 (adopting *Shepard*'s holding that sentencing courts may review only *Shepard*-approved documents, including charging document, written plea agreement, transcript of plea colloquy, jury instructions, judgment of conviction, or other record of comparable findings of fact adopted by the defendant upon entering a guilty plea, to determine whether a defendant's prior crimes satisfy the ACCA) (citing *Shepard v. United States*, 544 U.S. 13 (2005) and *Taylor v. United States*, 495 U.S. 575 (1990)). The issue before us in *King* was as follows: "When a federal district court is tasked with determining whether a defendant's prior offenses were 'committed on occasions different from one another' . . . , is the court restricted to using only the evidentiary sources approved in *Taylor* and *Shepard*?" *Id.* (internal citations omitted). We answered yes and reversed because the district court reviewed a non-*Shepard*-approved bill of particulars. *Id.* at 269, 278. In short, we held in *King* that a sentencing judge may "identify the who, when, and where of the prior offenses" in its different-occasions analysis but is constrained to "the evidentiary sources and information approved by the Supreme Court in *Taylor* and *Shepard*." *Id.* at 274–75. In reaching this conclusion, we recognized that the same "legal and policy rationales" underpinning the source limitation in the ACCA-predicate analysis also applied in the different-occasions context. *Id.* By limiting a sentencing court's repertoire to *Shepard* documents, we sought to prevent the judge from finding facts not admitted by the defendant. *See id.* at 272 (citing *Shepard*, 544 U.S. at 25–26). We recognized that, without such evidentiary restrictions, a sentencing court may "very well abridge the defendant's Sixth and Fourteenth Amendment rights." *Id.*

The district court interpreted *King* differently. The district court read *King*'s reliance on two post-*Shepard* cases, *Descamps* and *Mathis*, as a signal that sentencing courts are not only restricted to *Shepard* documents in the different-occasions analysis, but also limited to elemental facts inside those documents. In *Descamps v. United States*, the Court refused to authorize a modified categorical approach and permit the consideration of extra-statutory evidence—

*Shepard* documents—in the ACCA-predicate context when the statute in question is *indivisible*. 570 U.S. 254, 267–69 (2013). Otherwise, the sentencing court could make its own finding of fact about the means by which the defendant committed the offense and run afoul of the Sixth Amendment guarantee. *See id.* at 269; *see also Apprendi*, 530 U.S. at 490. In *Mathis v. United States*, the Court counseled again that "a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense." 136 S. Ct. 2243, 2252 (2016). To comply with the Sixth Amendment, the sentencing court may not stray beyond the elements of the prior offense "to determine the means by which [a defendant] committed his prior crimes." *Id.* at 2253. But the district court's interpretation of *King*'s reliance on *Descamps* and *Mathis* is flawed. In *King*, we drew upon the reasoning in *Descamps* and *Mathis* that the *Shepard-Taylor* source restriction quells constitutional concerns and is therefore appropriate in the different-occasions analysis. We did not, however, import *Descamps*'s and *Mathis*'s elements-means distinction or elemental-facts restriction to our different-occasions analysis.

Indeed, in *King* we recognized that, "because facts relevant to the different-occasions inquiry, such as the time and location of the prior offense, are most often not elements of the offense, a proceeding to answer the different-occasions question may well be more extensive than one to answer the ACCA-predicate question." *King*, 853 F.3d at 273 (citing *United States v. Dantzler*, 771 F.3d 137, 143–44 (2d Cir. 2014)). This is intuitive. If Congress sought to avoid mini-trials on ACCA determinations—which it did, *see id.*—then the sentencing court *must* be equipped to answer both the ACCA-predicate inquiry and the different-occasions inquiry. A sentencing judge can still make the ACCA-predicate determination under both the *Shepard-Taylor* source limitation and the elemental-facts-only restriction. A sentencing judge would be hamstrung, however, in making most different-occasions determinations if he or she were only allowed to look to elemental facts in *Shepard* documents which rarely involve date, time, or location. Such a restriction would not make sense; it would render violent-felony convictions adjudged together by the same court inseparable in the different-occasions context.

To illustrate, consider a defendant with six prior convictions that qualify as ACCA-predicate violent felonies: one for aggravated assault and five for aggravated robbery. The

aggravated assault conviction stands alone, but the five aggravated robberies were charged in the same indictment, pled guilty to at the same time, and contained in the same judgment of conviction. Even though this defendant had robbed five different businesses in different cities across a twelve-hour period, the indictment simply indicated that all five occurred on the same day in the same county. Assume, however, that during the plea colloquy for the five aggravated robberies, the defendant admitted to the facts describing the separate locations and times of each (non-elemental facts). Under Hennessee's theory, the district court could not consider the admission of these facts describing locations and times. But this theory reads too many restrictions into the *Shepard-Taylor* source limitation and unduly hinders a district court's ability to determine whether offenses occurred on different occasions.

Therefore, we find that the district court erred in confining itself to only elemental facts within *Shepard*-approved documents when conducting its different-occasions analysis. We hold that a district court may consider both elemental and non-elemental facts contained in *Shepard*-approved documents to determine whether prior felonies were committed on occasions different from one another for purposes of the ACCA.

IV.

We now turn to the *Shepard*-approved documents from his Davidson County convictions to determine whether Hennessee committed the two Tennessee offenses of attempted aggravated robbery and aggravated robbery on different occasions for purposes of the ACCA. To answer this question, we employ the well-established *Paige* test. *United States v. Pham*, 872 F.3d 799, 802 (6th Cir. 2017) (citing *United States v. Paige*, 634 F.3d 871, 873 (6th Cir. 2011)). Under the *Paige* test, two offenses are committed on different occasions if:

> (1) "it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins"; (2) "it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense"; *or* (3) "the offenses are committed in different residences or business locations."

*Southers*, 866 F.3d at 369 (emphasis in original) (quoting *United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012)); *see also United States v. Hill*, 440 F.3d 292, 297–98 (6th Cir. 2006). If Hennessee's prior Tennessee convictions satisfy any one of the three prongs, we can

conclusively say they were committed on different occasions for purposes of the ACCA. *See Jones*, 673 F.3d at 503. Because the facts contained within *Shepard* documents—namely, Hennessee's Davidson County plea colloquy transcript[4]—satisfy all three prongs of the *Paige* test, we hold that Hennessee committed these offenses "on occasions different from one another." *See* 18 U.S.C. § 924(e)(1).

Under the first prong, we can discern the point at which the first offense—attempted aggravated robbery of Aljashami—was complete and the second offense—aggravated robbery of Wainwright—began. Hennessee attempted to rob Aljashami in his apartment parking lot at 960 Edmondson Pike sometime between 4:30 and 5:00 a.m. on March 3, 2005. When Hennessee realized Aljashami did not have any money, Hennessee gave up and left. At that point, Hennessee's first offense was complete. Then, around 5:20 a.m., Hennessee approached Wainwright at a gas station on Smith Springs Road and robbed her at gunpoint. Hennessee's departure from Aljashami's apartment parking lot marked the completion of his first offense, and his approaching Wainwright at the gas station twenty to fifty minutes later marked the beginning of his second offense. Thus, we find it "possible to discern the point at which the first offense [was] completed, and the subsequent point at which the second offense [began]." *See Southers*, 866 F.3d at 369. The first prong of the *Paige* test is satisfied.

Under the second prong, we conclude that it would have been possible for Hennessee to cease his criminal conduct after his failed attempt to rob Aljashami and withdraw without committing the aggravated robbery of Wainwright. After the attempted robbery of Aljashami in the apartment parking lot, Hennessee could have stopped and gone home. Instead, he proceeded to the gas station where he robbed Wainwright. Thus, "it would have been possible for

---

[4]On appeal, Hennessee argues that his plea colloquy is insufficient to demonstrate that he committed the offenses on different occasions because his admission to the government's factual proffer "did not necessarily establish" the times or locations at which he committed the offenses. CA6 R. 16, Appellee Br., at 30. We find his argument unpersuasive. As explained above, a plea colloquy transcript is a *Shepard*-approved document that the court may examine in a different-occasions analysis. Hennessee admitted under oath that the factual basis proffered by the prosecutor was true. In addition, the sentencing judge in the Davidson County case explicitly informed Hennessee before he admitted the facts or pled guilty that "these convictions today can be used to increase, or enhance, the punishment of any future felony offenses[.]" DE 24-3, Davidson County Plea Tr., Page ID 91. Thus, any argument that Hennessee had "no motivation to quibble" or dispute the facts is undercut by the fact that Hennessee knew the potential implications of that plea hearing.

[Hennessee] to cease his criminal conduct after the first offense, and withdraw without committing the second offense." *See id.* This is enough to satisfy *Paige*'s second prong.

Under the third prong, we can easily determine that Hennessee committed these offenses in different residences or business locations. Hennessee committed the attempted aggravated robbery of Aljashami at 960 Edmondson Pike in the parking lot of Aljashami's apartment building. Hennessee committed the aggravated robbery of Wainwright at a Mapco Express gas station on Smith Springs Road. Because the apartment parking lot and gas station are clearly "different residences or business locations," *see id.*, Hennessee's offenses satisfy *Paige*'s third prong.

We note that there is significant overlap in our analyses of all three prongs: Hennessee's first offense and second offense were committed against different victims, in different locations, and at different times. This redundancy simply fortifies our conclusion that Hennessee committed these offenses on different occasions. Further, that he committed the attempted aggravated robbery and aggravated robbery only twenty to fifty minutes apart does nothing to undermine this conclusion. *See United States v. Banner*, 518 F. App'x 404, 406 (6th Cir. 2013) (noting that "the amount of time between the individual offenses is relatively unimportant" as long as the offenses meet any of the prongs of the *Paige* test). Similarly, it is irrelevant that Hennessee committed both offenses in the same city or county when we can discern that he committed one in an apartment parking lot and one at a gas station. *See Paige*, 634 F.3d at 873 (finding that five robberies were committed on "different occasions" despite being "close in location").

Based on the facts contained within *Shepard*-approved documents from Hennessee's Tennessee convictions, we find all three prongs of the *Paige* test satisfied.[5] We conclude that his prior offenses were committed on "occasions different from one another," 18 U.S.C. § 924(e)(1), and that Hennessee is therefore subject to the sentence enhancement under the ACCA.

---

[5]We reiterate, of course, that the facts need only satisfy one prong of the *Paige* test to establish that offenses were committed on different occasions.

V.

For the foregoing reasons, we vacate Hennessee's sentence and remand to the district court for resentencing with instructions to apply the enhancement under the Armed Career Criminal Act.

_____

**DISSENT**

_____

COLE, Chief Judge, dissenting.  In *United States v. King*, 853 F.3d 267 (6th Cir. 2017), we placed evidentiary limitations on the ACCA's different-occasions analysis.  Consistent with Supreme Court precedent, *King* limited the sources that courts can consider in conducting judicial factfinding regarding sentencing enhancements.  *Id.* at 273 (citing *Mathis v. United States*, 136 S. Ct. 2243 (2016); *Descamps v. United States*, 570 U.S. 254 (2013); *Shepard v. United States*, 544 U.S. 13 (2005); *Taylor v. United States*, 495 U.S. 575 (1990)).  *King* established that "*Taylor* and *Shepard*'s limitations on the evidentiary sources and information that a federal district court may consider in determining whether a prior conviction is a predicate under the ACCA also apply when the court determines whether prior offenses were 'committed on occasions different from one another' under the ACCA."  *Id.*

*King* explained that, under this "*Taylor-Shepard* approach," sentencing courts are "restricted to those facts that 'necessarily' underlie the prior conviction, *i.e.*, those facts necessarily determined beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant."  *Id.* (quoting *Shepard*, 544 U.S. at 20–21).  And in applying the *Taylor-Shepard* approach, the Supreme Court has rejected the idea that "a factfinder can have 'necessarily found' a non-element—that is, a fact that by definition is *not* necessary to support a conviction." *Descamps*, 570 U.S. at 266 n.3; *see id.* at 269–70 ("[T]he only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances.").  But today, the majority finds that our holding in *King* still permits a sentencing court to "consider non-elemental facts such as times, locations, and victims in *Shepard* documents when conducting the different-occasions analysis." Maj. Op. 2.  Because such a finding contradicts the Supreme Court's application of *Taylor* and *Shepard*, as well as our own holding in *King*, I respectfully dissent.

I.

To explain why I read our holding in *King* differently from the majority, I first address the Supreme Court and Sixth Circuit precedent underlying the evidentiary limitations we imposed in *King*. Supreme Court precedent prevents courts from conducting judicial factfinding that impacts a defendant's sentence, except in limited circumstances. *Apprendi v. New Jersey*, 530 U.S. 466, 487–90 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 230 (1998). We have found that one circumstance in which sentencing courts are permitted to make findings of fact is in determining whether a defendant's prior offenses took place on different occasions for the purposes of designating him as a career criminal under the ACCA. *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004). But, until *King*, we had not yet addressed the question of which evidentiary sources a sentencing court can use in conducting such judicial factfinding.

The Supreme Court has taken up that question in a different but related context: determining whether a prior conviction qualifies as a generic violent felony under the ACCA. In a series of cases—*Taylor*, *Shepard*, *Descamps*, and *Mathis*—the Court placed strict limitations on the evidentiary sources that a sentencing court can consider in conducting judicial factfinding. The heart of the evidentiary restriction contained in *Taylor* and its progeny is that sentencing courts can only consider facts on which the conviction necessarily relied—those that a jury necessarily found or a defendant necessarily admitted—in enhancing a defendant's sentence. *See Mathis*, 136 S. Ct. at 2255 ("[A]n ACCA penalty may be based only on what a jury 'necessarily found' to convict a defendant (or what he necessarily admitted)," and "elements alone fit that bill; a means, or (as we have called it) 'non-elemental fact,' is 'by definition[ ] *not* necessary to support a conviction.'"); *Descamps*, 570 U.S. at 270, 277 (focusing on whether prior convictions "require[d] the factfinder (whether jury or judge) to make that determination," because sentencing courts cannot consider facts "unnecessary to the crime of conviction"); *Shepard*, 544 U.S. at 20–21, 26 (focusing on whether defendant had "necessarily admitted" the elements of the generic offense such that the "plea had 'necessarily' rested on the fact" in question); *Taylor*, 495 U.S. at 602 (focusing on whether "jury necessarily had to find" all of the facts that would be required to convict the defendant of the generic offense). And the Court has

made clear that "the only facts the court can be sure" are necessary to the conviction "are those constituting elements of the offense," as opposed to "non-elemental fact[s]." *Descamps*, 570 U.S. at 269–70, 277; *Mathis*, 136 S. Ct. at 2255.

The Court has outlined two justifications behind the elemental-facts restriction that are relevant in the case before us. The first is that such a restriction "avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries," including facts that increase the defendant's maximum penalty. *Descamps*, 570 U.S. at 265, 269. The Court has explained that the same constitutional concern is present in the plea context: "as *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." *Id.* at 270 (citing *Shepard*, 544 U.S. at 24–26). The Court found that the elemental-facts restriction outlined in *Taylor* and *Shepard* assuages this constitutional concern, because the existence of a prior conviction necessitates that the jury or judge found the facts that made up the elements of that prior conviction. *Id.* at 269–70. Because the same cannot be said for non-elemental facts, the Court explained that, under the *Taylor-Shepard* approach, it is "irrelevant" whether a non-elemental fact is accurate or whether the defendant ever admitted the fact in question: if the crime for which the defendant was convicted "does not require the factfinder (whether jury or judge) to make that determination," the sentencing court cannot make that determination in assessing the prior conviction. *Id.* at 265, 277. Thus, the *Descamps* Court found that, in enhancing a defendant's sentence "based on his supposed acquiescence to a prosecutorial statement" in a plea colloquy, the sentencing court "did just what we have said it cannot: rely on its own finding about a non-elemental fact to increase a defendant's maximum sentence." *Id.* at 270.

The second justification is that the elemental-facts restriction "averts 'the practical difficulties and potential unfairness of a factual approach.'" *Id.* at 265. From a practical standpoint, the consideration of non-elemental facts would require sentencing courts to "expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy . . . facts that, although unnecessary to the crime of conviction, satisfy an element of the

relevant generic offense," and the "meaning of those documents will often be uncertain." *Id.* at 270. And from a fairness perspective, "the statements of fact in [such documents] may be downright wrong," especially because a defendant "often has little incentive to contest facts that are not elements of the charged offense." *Id.* at 270–71; *see also Mathis*, 136 S. Ct. at 2253 ("Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary."). Given these concerns, the Court concluded that the "ACCA [treats non-elemental] facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence," even where such a limitation seems "counterintuitive." *Id.* at 2251, 2253.

In *King*, we first addressed the question of which evidentiary sources a sentencing court can consider for the purposes of the ACCA's different-occasions analysis. We found that "the legislative history and constitutional concerns" animating the Court's decisions in *Taylor*, *Shepard*, *Descamps*, and *Mathis* "apply with equal force when a sentencing court undertakes the different-occasions inquiry." 853 F.3d at 272–73. For that reason, we reaffirmed *Burgin*'s rule that judges can engage in factfinding in conducting the different-occasions analysis, but we found that, "in identifying those facts, a sentencing judge is constrained to reviewing evidence approved by *Taylor* and *Shepard*." *Id.* at 274 (citing *Burgin*, 388 F.3d at 183). We noted that the *Taylor*-*Shepard* approach applied in the different-occasions analysis because of the previously articulated constitutional and fairness concerns posed by judicial factfinding that enhances a defendant's sentence:

> What most convinces us, then, that *Taylor* and *Shepard*'s evidentiary restrictions extend to the different-occasions question is the Supreme Court's expressed concern over a judge finding facts that become the basis of an ACCA enhancement. "Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction." *Descamps*, 133 S. Ct. at 2288. Just so with the different-occasions question: a sentencing court's finding that prior violent felonies were "committed on occasions different from one another" can be as dispositive of an ACCA enhancement as finding that a conviction is a third ACCA predicate. (Indeed, this is that case.) So if a sentencing judge, in answering the different-occasions question, became the trier of fact regarding when and where the prior offenses occurred, that procedure would raise the very

> constitutional concern identified in *Shepard* and reaffirmed in *Descamps* and *Mathis*.
>
> The *Taylor-Shepard* approach quells this constitutional concern. Under the framework of those cases, a judge is restricted to those facts that "necessarily" underlie the prior conviction, *Shepard*, 544 U.S. at 20–21, *i.e.*, those facts necessarily determined beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant, *see Descamps*, 133 S. Ct. at 2288. Thus, under *Taylor* and *Shepard*, a sentencing judge is not finding facts in the first instance, but merely identifying findings or admissions that were previously made under constitutional safeguards.

*Id.* (parallel citations omitted). Accordingly, *King* concluded that "*Taylor* and *Shepard*'s limitations on the evidentiary sources and information that a federal district court may consider in determining whether a prior conviction is a predicate under the ACCA also apply when the court determines whether prior offenses were 'committed on occasions different from one another' under the ACCA." *Id.*

And in importing this restriction into the different-occasions analysis, *King* made unambiguously clear that we understood that the core of the evidentiary restriction under the *Taylor-Shepard* framework is that sentencing courts can only consider facts on which the conviction necessarily relied. *Id.* at 272–73 ("The *Taylor-Shepard* approach quells this constitutional concern. Under the framework of those cases, a judge is restricted to those facts that 'necessarily' underlie the prior conviction, *i.e.*, those facts necessarily determined beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant."). Accordingly, I read *King* to import the elemental-facts restriction into the different-occasions analysis.

## II.

Because *King* adopted the evidentiary limitations imposed by *Taylor* and its progeny into the different-occasions analysis, I would find that sentencing courts conducting the different-occasions analysis can look to *Shepard* documents and consider facts therein that are "necessary" to the conviction in determining whether the offenses were committed on different occasions, but sentencing courts cannot consider any non-elemental facts in applying the ACCA enhancement. Instead, the majority finds that *King* intended only to limit sentencing courts' consideration to *any* fact contained within *Shepard* documents, regardless of whether the fact was necessary to

the conviction. As the Supreme Court put it in *Mathis*, "[e]verything this Court has ever said about ACCA runs counter to the [majority]'s position. That alone is sufficient reason to reject it[.]" 136 S. Ct. at 2257.

*Taylor*, *Shepard*, *Descamps*, and *Mathis* confine the sentencing court's consideration to certain types of *evidence*, not certain types of *documents*. In *Shepard*, the Court held that, in determining whether a defendant who pleaded guilty had "necessarily admitted" the elements of the generic offense, sentencing courts could only consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." *Id.* at 26. But these documents cannot be considered wholesale; rather, they serve as shorthand for the types of permissible evidence that they frequently contain. *Mathis*, 136 S. Ct. at 2256–57 ("[S]uch a 'peek at the [record] documents' is for 'the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.' (Only if the answer is yes can the court make further use of the materials[.])") (internal citation omitted).

The Supreme Court has made abundantly clear that the evidentiary limitation in *Taylor* and its progeny require an "elements-only approach," because "an ACCA penalty may be based only on what a jury 'necessarily found' to convict a defendant (or what he necessarily admitted)," and a "'non-elemental fact,' is 'by definition[ ] *not* necessary to support a conviction.'" *Id.* at 2254–55 (internal citations omitted) (alteration in original). "Accordingly, *Descamps* made clear that when the Court had earlier said (and said and said) 'elements,' it meant just that and nothing else." *Id.* at 2255.

*King* itself also made clear that it was looking to only those facts "necessarily admitted," not to the charging documents as a whole. There, the government had argued that, "in limiting a court applying the ACCA to what King necessarily admitted, we apply *Shepard*'s restrictions too strictly." 853 F.3d at 276. But *King* noted that "*Shepard* made clear that the task was to identify whether a prior conviction 'necessarily' rested on the elements of the generic offense," and "with a plea-colloquy transcript, the written plea agreement, or a comparable record, 'a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying the burglary as generic.'" *Id.* at 277 (quoting *Shepard*, 544 U.S. at 20–21, 26). *King* added:

But, one might argue, if the Supreme Court had truly wanted to limit courts making the ACCA-predicate determination to those facts necessarily admitted by the defendant or necessarily found by a jury, then why reference "charging documents" generally, rather than the necessary facts or elements within the charging documents? The answer, we think, lies in the issue presented to the Court in *Shepard*. Insofar as a sentencing court's task is to identify which *elements* underlie a prior conviction, the terms of the charging document will always be appropriate to consider: a conviction necessarily means the elements— but not "superfluous facts," *Descamps*, 133 S.Ct. at 2288—charged in the indictment were found by a jury or admitted by the defendant.

This understanding of *Shepard* is not new. We have previously read *Shepard* to permit courts to consider only those facts that a defendant necessarily admitted in pleading guilty. *See United States v. Medina-Almaguer*, 559 F.3d 420, 424 (6th Cir. 2009) ("[*Shepard*] requires a judicial record that identifies the facts a defendant 'necessarily admitted' in entering a guilty plea—as *Shepard* itself demonstrates.").

*Id.*

The majority correctly notes that its interpretation of *King* "accords with the approach adopted by the Second, Fourth, Fifth, Seventh, Tenth, Eleventh, and D.C. Circuits." Maj. Op. 6. But these other circuits' approaches do not conform to the restriction we set out in *King*. As the concurring judges explained in *United States v. Perry*, 908 F.3d 1126 (8th Cir. 2018), the majority rule runs contrary to the Supreme Court's approach in *Taylor* and *Shepard*, which has been made only more evident in more recent cases like *Descamps* and *Mathis*. *Perry*, 908 F.3d at 1134 (Stras, J., concurring) ("Inertia may be part of the explanation. Sometimes courts just continue along the same well-trodden path even in the face of clear signs to turn around."); *id.* at 1137 (Kelly, J., concurring) ("[I]n most cases, properly used *Shepard* documents would not assist the district court in its different-occasions determination, because time, place, and overall substantive continuity are facts, not legal elements, of the prior offenses," and judicial factfinding of non-elemental facts appears to "conflict with Supreme Court precedent.").

In *Perry*, Judge Stras explained why permitting consideration of non-elemental facts contained within *Shepard* documents was constitutionally problematic:

A misunderstanding of the permissible uses of *Shepard* documents may also account for the predominant view. Some courts claim that there is no Sixth Amendment problem as long as courts limit themselves to facts taken from

charging documents, plea agreements, and comparable materials—more commonly known as *Shepard* documents. "[R]epurpos[ing]" *Taylor* and *Shepard* to justify judicial fact-finding, however, turns those decisions on their heads. . . .

*Shepard* documents . . . serve a specific and narrow function; they are not an excuse for allowing courts to dig through the record to find facts. To the contrary, properly used, they do not support fact-finding at all. The Court made that abundantly clear in *Descamps* by prohibiting judges from "look[ing] to reliable materials (the charging document, jury instructions, plea colloquy, and so forth) to determine what facts [could] confidently be thought to underlie the defendant's conviction." The reason, the Court explained, is that when there is no need to choose between multiple possible crimes, *Shepard* documents simply "ha[ve] no role to play."

The approach the Court rejected in *Descamps* is not meaningfully different from using *Shepard* documents to make the different-occasions determination. Both call for sifting through record materials for evidence of what a defendant actually did, either to determine whether it fits the definition of a violent felony, or to determine if two or more crimes were committed on different occasions. If one improperly "convert[s] [the categorical] approach into its opposite," *Descamps*, 570 U.S. at 274, so does the other.

*Id.* at 1135–36 (Stras, J., concurring) (internal citations omitted). Because *King* held that sentencing courts could only consider "facts that 'necessarily' underlie the prior conviction, *i.e.*, those facts necessarily determined beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant," 853 F.3d at 273, the majority rule falls short here for the same reasons that the judges concurring in *Perry* explained.

I also part ways with the majority's interpretation of *King* regarding the very constitutional and fairness concerns that *King* set out to avoid in adopting the *Taylor-Shepard* approach. The Supreme Court has repeatedly held that relying on non-elemental facts that a defendant admitted in a plea colloquy is constitutionally problematic because, "as *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." *Descamps*, 570 U.S. at 270. As the Court explained in *Descamps*:

A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense—and may have good reason not to. [D]uring plea hearings, the defendant may not wish to irk the prosecutor or court by

squabbling about superfluous factual allegations. In this case, for example, Descamps may have let the prosecutor's statement go by because it was irrelevant to the proceedings. He likely was not thinking about the possibility that his silence could come back to haunt him in an ACCA sentencing 30 years in the future.

*Id.* at 270–71 (internal citations omitted). And in *Mathis*, the Court made a similar assessment regarding the unfairness of a sentencing court's use of non-elemental facts to enhance a defendant's sentence:

Statements of "non-elemental fact" in the records of prior convictions are prone to error precisely because their proof is unnecessary. At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he "may have good reason not to"—or even be precluded from doing so by the court. When that is true, a prosecutor's or judge's mistake as to means, reflected in the record, is likely to go uncorrected. Such inaccuracies should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence.

136 S. Ct. at 2253 (internal citations omitted).

The facts of this case illustrate just how relevant those concerns remain in the context of the different-occasions analysis. Here, the government asks us to add five years to Hennessee's sentence because, after the prosecutor recited a jumbled version of the facts that was inconsistent with the locations listed in the indictment and that left the timing of the two offenses unclear, Hennessee summarily agreed those facts were "basically true" in order to facilitate a plea deal. (Plea Tr., R. 24-3, PageID 94–95.)

Nor are the practical concerns we noted in *King* avoided by the majority's interpretation. Our decision in *King* noted that many of the practical concerns outlined in *Mathis* and *Descamps* applied in the context of the different-occasions analysis. *Id.* at 272–73. For example, "Congress's desire to avoid mini-trials almost assuredly covers not only proceedings to answer the ACCA-predicate question but also proceedings to answer the different-occasions question." *Id.* at 273. As we noted in *King*, the Court's concerns regarding fact-finding are amplified in the context of the different-occasions analysis: the majority itself acknowledges that, "because facts relevant to the different-occasions inquiry, such as the time and location of the prior offense, are most often not elements of the offense, a proceeding to answer the different-occasions question

may well be more extensive than one to answer the ACCA-predicate question." Maj. Op. 8 (quoting *King*, 853 F.3d at 273).

This case provides an excellent example of the types of mini-trials that would unfold by permitting district courts to look to non-elemental facts contained within *Shepard* documents. The government argues that the *Shepard* documents straightforwardly demonstrate that the offenses were committed on different occasions, contending that the plea colloquy demonstrates the offenses took place at different times and locations, and Hennessee admitted to the facts in the plea colloquy. But Hennessee resists this characterization of the *Shepard* documents on three separate grounds.

First, there are several discrepancies between two different *Shepard* documents before the sentencing court—namely, the indictment and the plea colloquy. For example, as the majority notes, both victims' names are different across the two documents: changing from "Jerry Wainwright" to "Ms. Terry Wainwright," and from "Mudhafar J. Aljashami" to "Mr. Alah Basabi (ph.)." (Indictment, R. 24-1, PageID 81–82; Plea Tr., R. 24-3, PageID 94). More critically, the address of the apartment where the government asserted the first robbery occurred differs in the indictment and the plea colloquy, changing from "4960 Edmondson Pk." to "960 Edmondson Pike." (Indictment, R. 24-1, PageID 80; Plea Tr., R. 24-3, PageID 94.) The impact of this discrepancy is made especially clear in conjunction with the government's request that we take judicial notice of the fact that a Mapco Express currently located at 2827 Smith Springs Road in Nashville, Tennessee, is located roughly 13–14 miles from 960 Edmondson Pike in Brentwood, Tennessee, based on a present-day Google Maps search. Hennessee opposes this request, noting that none of the documents surrounding his conviction list an exact address on Smith Springs Road, and arguing that "[w]hile the government, looking at Google Maps in 2018, guesses that the incident in 2005 occurred where a Mapco gas station is located on Smith Springs Road thirteen years after the fact, that is speculation." (Appellee Br. 37–38 n.3.) Additionally, Hennessee points out that the plea colloquy transcript indicated that the prosecutor seemed unsure about the location of the gas station robbery, and he notes that a Mapco gas station also exists on Edmondson Pike. A second Google Maps search reveals that the Mapco station

Hennessee references is less than a mile from 4960 Edmondson Pike, the address listed for the apartment in the indictment.

Even apart from the discrepancies across documents, the prosecutor's recitation of the facts within the plea colloquy was muddled, representing that the offenses took place "just a few minutes" apart, or perhaps twenty minutes apart (5:00 a.m. to 5:20 a.m.), or maybe fifty minutes apart (4:30 a.m. to 5:20 a.m.). (Plea Tr., R. 24-3, PageID 94–95.) Any of these scenarios would be a reasonable reading of the prosecutor's recitation of the facts, yet only the final option is expressly covered by the case the government cites as support. (Appellant Br. 34 (citing *United States v. Brady*, 988 F.2d 664, 665 (6th Cir. 1993) (en banc) (finding that "two armed robberies of different victims at different locations committed approximately thirty minutes apart were 'committed on occasions different from one another'").)

Finally, Hennessee did not present his own version of the facts, nor did he clarify the timing or location of the offenses at the plea colloquy. Hennessee's so-called admission was that, when he was asked to confirm whether the prosecutor's disjointed recitation of the facts was "basically true," he responded, "Yes, sir." (Plea Tr., R. 24-3, PageID 95.) Because the court added the qualifier "basically," a sentencing court could reasonably find that Hennessee would not have quibbled with details like times or locations, given that he agreed with the basic *elemental facts* that he had robbed or attempted to rob each of the victims referenced in the plea colloquy, which were the only facts essential to the plea. *See Descamps*, 570 U.S. at 265; *Mathis*, 136 S. Ct. at 2253. Given that the robberies were close in both time and location, the difference between whether the facts as described were "true" or "basically true" may be outcome determinative.

I raise these disputes not to cast light on which of the parties would prevail, but to highlight that permitting sentencing courts to review non-elemental facts within *Shepard* documents will require courts to resolve the very type of disputes that *King* and the Supreme Court sought to avoid. In contrast, the elemental-facts restriction would forbid sentencing courts from considering these facts and avoid these time-intensive disputes altogether.

III.

The majority rejects *King*'s elemental-facts restriction because limiting sentencing courts to consideration of "elemental facts in *Shepard* documents which rarely involve date, time, or location" would leave courts "hamstrung" in "making most different-occasions determinations," given that such a restriction "would render violent-felony convictions adjudged together by the same court inseparable in the different-occasions context." Maj. Op. 8. The majority says such an interpretation "would not make sense." *Id.* I disagree.

First, *King*'s evidentiary limitation only impacts the different-occasions analysis in a specific subset of cases: those in which the relevant prior offenses were charged or pleaded together. If Hennessee's prior convictions had been for three aggravated robberies in Davidson County, Tennessee—one in 2006, one in 2010, and one in 2016—the district court would not have needed to turn to the *Shepard* documents to determine whether the offenses were committed on different occasions.

Second, even within the context of these cases, sentencing courts are only "hamstrung" by *King* in the sense that they would not be permitted to consider evidence of non-elemental facts—they will not have to search for the evidence elsewhere; rather, their inability to consider non-elemental facts will simply result in fewer findings that offenses committed on the same day qualify as separate predicate offenses under the ACCA. The majority says that this result "would not make sense," as it places too many restrictions on district courts. Maj. Op. 8. However, I would not determine the applicability of a constitutional safeguard based on whether it would hamstring a district court, especially where the very purpose of the constitutional protection is to limit the types of evidence on which courts can rely. For example, a defendant's right to confront the witnesses against him also prevents courts from considering all the available evidence. Yet we would not question whether this constitutional safeguard applies even where the excluded testimony would otherwise be material to the district court's analysis.

Third, the majority asserts that it "would not make sense" to preclude courts from applying an ACCA enhancement based upon multiple offenses committed on the same day. The majority reasons that, if the elemental-facts restriction were in place, a defendant who "robbed

five different businesses in different cities across a twelve-hour period" would not qualify as an armed career criminal if those robberies were charged in the same indictment, pled guilty to at the same time, and contained in the same judgment of conviction. Maj. Op. 9. But it has not always been a foregone conclusion that such offenses would or should suffice as separate predicates. To the contrary, in the years after Congress added the requirement that the three predicate offenses be "committed on occasions different from one another" to the ACCA, five judges on this court dissented from that conclusion in one of our en banc decisions, arguing that counting offenses committed on the same day as separate predicate offenses would effectively eliminate "the concept of *career* in the general philosophy behind (not to mention the title of) the Armed *Career* Criminal Act" and render the new "committed on occasions different from one another" language "utterly meaningless." *Brady*, 988 F.2d at 675–77 (Jones, J., dissenting) ("In essence, the majority holds that Brady has had a 'career' in less than an hour. It misses logic to hold that a 'career' can comprise the events of a single evening, or more aptly put, less than one hour, and thereby subject him to fifteen years of incarceration."). To be sure, neither this court nor the other circuits adopted this understanding of the different-occasions requirement. But I am persuaded that such an approach, which garnered the support of five judges on this court, makes sense, especially if the constitutional concerns identified in *Taylor* and its progeny compel such a result.

Fourth, *King* spoke directly to the majority's concern that forbidding sentencing courts from "consider[ing] the admission of these facts describing locations and times . . . reads too many restrictions into the *Shepard-Taylor* source limitation and unduly hinders a district court's ability to determine whether offenses occurred on different occasions." Maj. Op. 9. *King* contains the following language regarding the continued vitality of the different-occasions analysis in conjunction with evidentiary limitations imposed by *Taylor* and *Shepard*:

> The Government also raises a practical argument. It asks, how can a district court answer the different-occasions question if it is "blinded" to the evidence it needs to make that determination by *Taylor* and *Shepard*'s restrictions?
>
> We recognize that in some cases Taylor and Shepard evidence will not be sufficient for a district court to determine that prior offenses occurred on different occasions while a broader swath of evidence would permit the determination. But a similar practical argument was raised and rejected in *Shepard*. There, it was

argued that a police report, "free from any inconsistent, competing evidence," would have reliably shown that the defendant had burglarized a building (as the ACCA's burglary predicate required), whereas, absent the report, it was (likely) impossible to identify which of several alternatives was the basis of the prior conviction. *See Shepard*, 544 U.S. at 17–18, 22[.] This concern, the Court explained, was not "sufficient justification for upsetting precedent," particularly as *Taylor*'s evidentiary limitation "was the heart of [that] decision." *See id.* at 23. The Court further noted that "time has enhanced even the usual precedential force" of *Taylor* because in the intervening fifteen years, Congress had made no change to the statute. *Id.* In reaching our decision based on the same reasoning, we likewise respect precedent.

853 F.3d at 274–75 (parallel citations omitted).

In this passage, *King* made clear that its decision to import the evidentiary restriction at the heart of *Taylor* limits the breadth of the ACCA's different-occasions analysis, and it openly acknowledged that this evidentiary restriction would prevent sentencing courts from considering otherwise available evidence that would demonstrate that the prior offenses occurred on different occasions. Still, it found that the fact that these restrictions would hinder sentencing courts was not sufficient justification to stray from the evidentiary limitation at the heart of *Taylor*. *Id.* This same intuition is reflected in *Mathis*, where the Supreme Court concluded that sentencing courts cannot use non-elemental facts to enhance a defendant's sentence under the ACCA, even in cases where that restriction seems impractical or "counterintuitive." 136 S. Ct. at 2251, 2253 ("That rule can seem counterintuitive: In some cases, a sentencing judge knows (or can easily discover) that the defendant carried out a 'real' burglary, even though the crime of conviction also extends to other conduct. No matter.").

We cannot, in this case, rewrite *King* altogether. A straightforward reading of *King* and the cases on which it relies makes clear that, "whether for good or for ill, the elements-based approach remains the law." *Mathis*, 136 S. Ct. at 2257.

IV.

For the above reasons, I respectfully dissent.